### Peoria Mfg. Co., Charles A. Davis and Petefish, Skiles & Co., v. D. Lyons, Coroner, use of David Bradley Mfg. Co.

1. CONTRACTS—*Rules of Construction.*—In construing a contract the purpose and intent of the parties, and the legal effect as to third persons, of what they agreed to do, may be determined from the transactions authorized or contemplated to be performed by force of the terms and conditions of their contract.

2. A written agreement for the consignment of goods for sale is here construed to be a contract of sale of the goods as to creditors of the consignee or agent.

**Memorandum.**—Debt on replevin bond in the Circuit Court of Cass County; the Hon. LYMAN LACEY, Judge, presiding. Trial by court, finding for plaintiff; debt, $2,000; damages, $191,36; defendant appeals. Heard in this court at the November term, 1893, and affirmed. Opinion filed April 28, 1894.

### STATEMENT OF THE CASE.

An execution issued upon a judgment in favor of the David Bradley Manufacturing Co., against the firm of Weaver & Treadway, was levied upon the stock in trade found in the place of business of the debtor firm. In and constituting part of the stock so levied upon were certain wagons, buggies, plows, rakes, etc., which the defendants in the execution had obtained of the Peoria Manufacturing Company under the provisions of the following contract:

VIRGINIA, ILL., January 15, 1892.

Contract made by and between Peoria Manufacturing Co., Peoria, Ill., of the first part, and Weaver & Hutchins, of Virginia, Ill., party of the second part, witnesseth:

First party agrees to deliver to second party on the following conditions, farm wagons, plows, buggies, and other goods, such as may be ordered by party of the second part, and accepted by party of the first part, on commission for party of the second part.

Second party agrees to sell all such goods at retail prices, the difference between the prices at which they were billed out on consignment to second party, and the price received by second party from their customers for same to be their full commission, and party of the second part is to receive no other commission or pay from party of the first part.

In case notes are taken by the party of the second part from their customers in payment for such goods, the same are to be bankable notes, taken on blanks furnished by first party and in their name, payable to their order and turned over to first party with second party's guarantee that said notes shall be paid promptly at maturity, and if said notes are not

Peoria Mfg. Co. v. Lyons.

paid by their maker at maturity, said party of the second part shall pay at once principal and interest secured without any exemption under existing laws.  This guarantee to be in full force until all notes and interest are paid.

In case the goods are sold by second party for cash, second party shall turn over at once said cash to party of the first part.  All goods ordered by second party to be on the same terms and conditions as above.  Second party shall invariably receive notes or cash from their customers for goods sold.

It is further agreed between the parties that second party will advance to party of the first part their notes, to full amount of goods, when received by party of the first part on time specified in such order, but said notes are not to be in any case or sense any settlement for said goods received by second party from first party.  The proceeds for all goods delivered to party of the second part, and sold to his customers and turned over to first party, shall be credited upon second parties' notes until principal and interest are covered in full.

Party of the second part further agrees to keep all such goods thus consigned well housed and fully insured.  Also to transfer any goods that may be ordered to any other point, free of drayage or transfer charges, and at the termination of this contract, Jan. 1, 1893, to return all goods on hand, unsold, to Peoria, free of freight, at the option of the party of the first part.

In consideration of the above contract, party of the second part agree to handle, exclusively, the goods sold by party of the first part.

PEORIA MANUFACTURING Co.,
    Per C. A. DAVIS, Pres. and Treas.
WEAVER & HUTCHINS.

Hutchins transferred his interest in the property and business of the firm of Weaver & Hutchins to one Treadway, and the firm of Weaver & Treadway succeeded to the property and business of the former firm, and under the provisions of the before recited contract obtained the arti-

cles in question from the Peoria Manufacturing Co. The Peoria Manufacturing Co. replevied the articles of property levied upon by the sheriff, but dismissed the action without a trial upon the merits.

The Bradley Manufacturing Co., plaintiff in the execution, caused an action in the name of the coroner for its use to be instituted upon the replevin bond of the Peoria Manufacturing Co., and in that action recovered a judgment for the value of the goods taken by the replevin writ. This is a writ of error prosecuted to reverse that judgment.

GEO. T. PAGE and A. A. LEEPER, attorneys for plaintiffs in error; STEVENS & HORTON, of counsel.

R. W. MILLS, attorney for defendant in error.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

Whether the agreement was a consignment of goods for sale upon commission, or a sale of the goods. is the only question arising upon the record. In form and according to the designation given it by the parties, the agreement was for the consignment of goods for sale. But we are concerned as to its real character, which is to be determined from considerations apart from its mere form, or the name applied to it, or to any act to be done under it. The purpose and intent of the parties and the legal effect as to third parties of what they agreed to do, may be best determined from the transactions authorized or contemplated to be performed by force of the terms and conditions of their contract. Thus construed, and its provisions considered in the same consecutive order as the acts under it were to be performed rather than in the order in which the provisions are incorporated in the agreement, we find, 1st, that Weaver & Treadway were to order goods from the Manufacturing Co.; 2d, that the company should, if it desired to do so, fill the orders and ship the goods at prices fixed by it and render regular bills of invoice therefor; 3d, that Weaver & Treadway were to execute and deliver their notes to the

Manufacturing Co., for the value of the goods as shown by the bills so rendered by the company; 4th, that the contract contained no provision empowering Weaver & Treadway to return the goods or articles so received from the company in settlement in whole or in part of their notes. So far the transactions contemplated to be done differ in no material respect from ordinary sales of goods by one party to another. Nor do we think anything otherwise appearing in the contract operates to take the transactions agreed to be performed out of the category of sales. The provision that Weaver & Treadway should sell the goods at retail prices certainly has no such effect, for that is fairly in ordinary contemplation in all cases when retail dealers purchase goods to be by them again sold. The difference between the price paid or to be paid for goods and the price obtained for them when sold at retail, constitutes the profits of the retailer and is not transformed into a commission upon the sale because parties in this instance choose to give it that designation. Weaver & Treadway were required by other terms of the contract to sell all articles for cash or for the notes of the buyer and to deliver the proceeds of each sale, whether cash or a note of the buyer, to the Manufacturing Company. This requirement, it is suggested, clearly established that the goods were held for sale upon commission. We think not. The proceeds of every sale made by the firm consisted in part of the profits made upon the sale or "commission" thereon.

Commissions earned by sales of goods by agents or commission merchants belong to such agents or merchants and as such are retained by them and the net proceeds only remitted to the principal or consignor. Under this contract, however, all "commissions" were to be delivered over to the principal to be by it credited upon the notes of Weaver & Treadway given for the goods "until the principal and interest of the note are fully paid." The application of the proceeds of each sale as a payment upon these notes would, in effect, recompense the manufacturing company for the article sold and pay an additional sum (the amount of the

commission) upon the balance due it for other articles yet remaining to be sold. Thus Weaver & Treadway would, if we accept the contention of the manufacturing company, be constantly applying their earnings to the payment of notes given for goods which, according to such contention, they had not bought and did not own, but only had possession of as agents for the true owner. The continued application of the entire proceeds of all sales to the payment of the notes given by the firm might, and most likely would, result in fully discharging and paying the notes before all the articles for which the notes were given had been sold.

Yet, according to the argument, such unsold articles, though fully paid for, would remain the property of the manufacturing company. A construction leading to such absurdities can not be adopted. The application of the proceeds of sales so provided for, is consistent only with the view that Weaver & Treadway purchased the goods upon credit granted upon condition that they would devote the entire proceeds of all sales to the payment of the indebtedness created by such purchase. The requirement, that Weaver & Treadway should keep the goods well housed and insured, is nothing beyond what is usual in cases where liens upon personal property are relied upon to secure the payment of money. Compliance therewith was equally important to the Peoria Manufacturing Company, whether it was the owner of the property or merely held a lien upon it to secure the payment of the notes of Weaver & Treadway. This provision of the agreement is as fully consistent with the position that the goods had been sold and a lien for the purchase price reserved as that the goods were held under consignment for sale upon commission. Authority is given the manufacturing company by the contract to require all goods remaining unsold at the expiration of the contract to be returned to it. Whether such return shall be made, is, however, at its option. Unless the option be exercised by the company, Weaver & Treadway must retain the goods and be answerable upon their notes given to the company for them. And the manufacturing company could

not exercise the option if the application of the proceeds of sales had under the terms of the contract discharged the notes given by the firm. If at the date named as the time for the expiration of the contract, such notes were unpaid or partly unpaid, the articles covered by the agreement remaining unsold might, as between the parties, be demanded and taken by the manufacturing company.

The agreement is silent as to the disposition to be made of any articles that might or should be so taken, yet no one will contend but that the law would require the manufacturing company to expose them for sale for the purpose of raising a fund for the payment of the notes or the unpaid balance of any notes held against Weaver & Treadway, and the cost of sale, etc., and to sell as many of the articles so taken as might be found necessary for that purpose, and return any article or articles not necessary to be sold to Weaver & Treadway, as in other cases where liens upon personal property are enforced by seizure and sale. So it seems clear the authority given to take the property is in no material respect different from that possessed by mortgages of chattel property. But one other clause of the contract remains to be considered. It empowers the manufacturing company to order the goods to be shipped to other points before the expiration of the contract and may seem to give color to the claim that the goods were held for sale upon commission. It is manifest, however, that this power of control over the goods could not be exercised if the proceeds of the sales of articles received under the contract had been so applied under its terms as to discharge and pay the notes of the firm. The power existed only so long as the manufacturing company held unpaid notes of the firm. If payment of the notes operated to divest the manufacturing company of all power over the goods it must, it seems, be clear that the power existed only as a means of securing the indebtedness evidenced by the notes. The conclusion seems inevitable that Weaver & Treadway were invested with full title to the goods, subject to such control thereof or lien thereon as the instrument created in favor of the manufacturing company. As to

execution creditors of the firm, the title of the firm was unaffected by these liens or rights of the manufacturing company, because our statute makes void as to such third parties such secret liens upon chattel property. The doctrines announced by our Supreme Court in the case of Chickering et al. v. Bastries, 130 Ill. 206, are applicable to the questions here discussed and fully support the conclusion we have reached.

The judgment must be affirmed.