## C. C. Brown, Assignee of George W. Chatterton and N. H. Ridgely & Co., v. The John Church Co.

1. SALE—*A Consignment to an Agent is Not a Sale to Him.*—The court states the contract and holds that it did not constitute a sale of the goods consigned under it, but that the consignee held them as the agent of the consignor.

**Memorandum.**—Proceedings under the act providing for assignments for the benefit of creditors.   Appeal from an order of the County Court of Sangamon County; the Hon GEORGE W. MURRAY, Judge, presiding. Heard in this court at the May term, 1894, and affirmed.   Opinion filed October 29, 1894.

### STATEMENT OF THE CASE.

The contest in this case arose over the ownership of certain pianos which Chatterton received from the John Church Co., under the terms and conditions of the following instrument:

THE JOHN CHURCH CO.

Dear Sirs:—I agree to take on assignment your pianos, such as described in your catalogues, and sell them on the following conditions, in consideration of my having the agency for the sale of said instruments in the following counties in Illinois, viz.: Brown, Cass, Christian, south two-thirds of DeWitt, Logan, Macoupin, Mason, Menard, Montgomery, Morgan, Sangamon and Scott.

First.   I hereby agree that all pianos that are now, or

shall hereafter be, furnished me by you, are to be held upon consignment and sale for your benefit.

Second.    All money, notes, or other property received by the sale of any piano, shall belong to you until settlement is made therefor, and all notes taken upon any such sale shall be made payable to you.

Third.    Upon any sale being made, the same shall immediately be accounted for, and all money and notes taken upon such sale shall be paid and made over to you, and I agree to guarantee the payment of all notes so taken in writing upon the back of such notes.

Fourth.    The right of instructing as to the terms upon which sales are to be made, and the manner of securing deferred payments, is reserved to you.

Fifth.    Upon your demand, or that of your agent, I will deliver as you may direct, free of charge or expense of any kind to you, any and all said goods remaining unsold at the time of said demand.

Sixth.    I will order from you and make a specialty of your goods; and I will not order stock or instruments for which there is not a reasonable prospect of immediate sale; and to secure performance of this agreement I consent that all goods returned shall be passed to my credit at ninety per cent of the original bill; the balance (ten per cent) being deducted for depreciation and shop-wear of goods, and the ten per cent so deducted I agree to pay to you in cash.

Seventh.    On the first of each month I will send you a report of all instruments received, sold and on hand, and will not expect orders to be accepted and filled while such report is over-due.

Signature, GEO. W. CHATTERTON.

Witness,                Address,            Springfield, Ill.
E. P. CHURCH.            Date,               June 10, '93.

In consideration of the premises and $1.00, a receipt of which is hereby acknowledged, the undersigned guarantees to The John Church Co. the faithful performance of the agreements mentioned in the above instrument, by the party whose signature is hereunto fixed.

### INSTRUCTIONS TO AGENTS.

The instruments selected by agents will be assigned to them by The John Church Co., on four months' time at the following prices from factory :

Everett pianos; 10–190, oak 10–200; 11–195, oak 11–205; 12–200, 13–210, 17–220, 18–327; fancy cases $15 more; Eb. 20–380, Mah. and oak, 20–405. Harvard, B, 170, omit, Wal. or Mah. B, 175. Open or closed panels for both styles.

After four months from date of consignment, agents are required to pay interest at rate of seven per cent per annum on all stock held thereafter until sold or returned to The John Church Co.

If agents send cash in full settlement to the John Church Co. for any pianos so consigned, The John Church Co. will give discounts as follows for the same :   $20 discount for cash in four months from date of consignment.

The amount of notes sent in for settlement for any piano, must be at least twenty-five per cent in excess of invoice price of instrument for which they have been taken; otherwise agents must send the difference in cash to The John Church Co.

All notes and contracts to be at all times subject to the approval of The John Church Co., before being accepted by them, and must bear interest at seven per cent.

Upon all sales made upon the installment plan, according to these instructions, agents may retain the first cash payment, provided it does not exceed three-fourths ($\frac{3}{4}$) of their entire commission on the sale, but the balance taken on such sale must be sufficient to cover invoice price and twenty-five per cent excess; The John Church Co. to receive the next and all consecutive payments until they have received the full amount of invoice price with interest and deductions (if any), at which time agents will be entitled to receive the remaining unpaid notes in payment of commissions, provided they are not otherwise indebted to The John Church Co.

If second-hand instruments are taken in part payment on sales, agents may retain them as their property, but the

returns sent to The John Church Co. must equal the invoice price and twenty-five per cent excess.

I accept and agree to the above instructions.

GEO. W. CHATTERTON.

The County Court of Sangamon County held that Chatterton held the pianos as agent of the Church Co. The appellant insisted that the contracts constituted a sale of the pianos within the rule announced in Murch v. Wright, 46 Ill. 487, and Chickering v. Bastress, 130 Ill. 206, and for that reason prosecuted an appeal to this court.

PATTON, HAMILTON & PATTON and CONKLING & GROUT, attorneys for appellants.

CONNOLLY & MATHER, attorneys for appellee.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The appellants insist that the real transaction between The John Church Co. and Chatterton was a sale of the pianos, and that the written contract entered into between them, though in form a consignment of the pianos for sale, was intended to cover a sale and preserve a lien in favor of the vendor, for the purchase price of the instruments. Appellants do not contend that there is proof in the record, outside of the written instrument, from which the transaction should be deemed a sale, but rest their contention alone upon the construction of the agreement. The contract, to us, seems to be a consignment of pianos for sale, and not a sale of them. We see nothing in its terms and conditions, or in the instructions to agents attached to it, to mark the transaction as a sale, and the agreement but a devise to preserve a lien for the purchase price. The first clause states explicitly that the pianos are held on consignment, and it is not argued that a contrary inference is aided by anything found in it. The second clause and the third relate to the same matters, and should be considered together. They simply provide that each sale of a piano shall be accounted for as soon as made, and that all moneys, notes or property re-

ceived by the sale shall be paid over to, and shall belong to The John Church Co. The notes, if notes are taken, to be made payable to the company, and payments thereof to be guaranteed by Chatterton, and that the Church Co. shall hold the entire proceeds of each sale until settlement is made for the piano sold, that is, until the Church Co. have received in cash from the proceeds of the sale the invoice price of the pianos.

We see nothing in this inconsistent with the position that the instruments were to be sold by Chatterton as the agent of the Church Co. It is suggested that under these provisions the supposed agent receives no compensation or commission, which is supposed to indicate that the goods were not sold by an agent.

It is clear from a consideration of the contract, and the instructions to agents attached to, and forming a part of it, that Chatterton's compensation was the excess that he might be able to obtain by the sale of any piano above the invoice price thereof. The clause under consideration places the entire proceeds of each sale in the possession of the Church Company, as its property, until the invoice price should be realized by them therefrom. The effect and purpose of this was to allow the Church Company to obtain the portion due it before the agent could receive his commission to give it priority in point of time of payment and to devote the proceeds, if necessary, wholly to that purpose, leaving the balance, whether little or much, to the agent. Nothing in all this indicates a sale as we view the matter. The appellants make no criticism of the fourth clause, but as to the fifth, say that it was wholly unnecessary, if the transaction was a bailment as a consignor for sale only, would have no occasion to contract for the right to demand and receive back unsold goods. It is usual to fix by the terms of an agreement the time for which it shall be in force. Without such a special agreement in such a transaction as the one at bar, we would not be inclined to hold that the consignor might withdraw his goods from sale at pleasure. Reasonable notice of an intention so to do should be

required in the absence of a fixed period for the termination of such a business undertaking, as these parties were engaged in. It was therefore entirely proper to stipulate, as was done by the fifth clause, that the consignor might withdraw his goods from sale at will. It is argued that the sixth clause shows that the contract was a sale and was inserted in order to provide a way to get the goods back with payment in cash for any depreciation in case Chatterton should fall into financial straits. We do not think so, but think the clause was inserted because the Church Company wished to have Chatterton give the business of selling its pianos especial attention, and yet did not desire to furnish him with a larger stock of pianos than should be reasonably required nor to allow him to keep unsold pianos, which, if returned, might be sold by other agents at other points. One who replenishes his stock in trade by purchases will be likely to confine his orders within reasonable limits, for he must keep and pay for what he buys; but one who is selling articles as an agent has no such personal interest to operate as a check upon him, and, if free to do so, might, in the hope of adding to his gains, unduly increase his stock, to the manifest damage and injury of the principal. The sixth clause was framed to protect the owners of the pianos in this respect and seems to us to have been properly devised to that end. The clause in the "Instructions to Agents" which binds Chatterton to pay interest on the value of any instrument that he has had for four months until he returns it, was inserted for a like purpose. It was intended to restrain Chatterton from ordering pianos beyond the reasonably anticipated needs of his trade, and also operated as an incentive to him to seek for and find buyers for the pianos in order that he might avoid the payment of interest upon the invoice price of such as were unsold, and further to induce him to return instruments, if his stock should be larger than the demands of his business warranted or any instruments not such in point of price, finish or quality as his customers desired to buy. Appellants contend that Chatterton had unlimited authority to sell at such

prices as he might see fit to fix, a power, as they argue, consistent only with ownership. We think that he had not such authority, at least between himself and the Church Company, though a *bona fide* purchaser from Chatterton might have been protected. The provisions of the contract are that the Church Company was to receive out of the proceeds of each sale the invoice price, if the sale was not made for cash, and if for cash, they were to accept twenty per cent discount. Sales were to be made at prices consistent with these provisions. Nothing in the agreement or instructions to agents creates a liability upon the part of Chatterton to pay for the pianos. He did not buy them, did not agree to pay for them, and was in no wise obligated to do so. In the case of Chickering v. Bastress, 130 Ill. 206, and that of Peoria Manufacturing Co. v. Lyons, Coroner, etc., 55 Ill. App. 41, agreements, similar to the one under consideration, were held to be sales of the property. In each of these cases the pretended agents were required to execute notes payable to the principal for the goods and to agree that the proceeds of sales should be applied to the payment of the notes which remained binding obligations upon the makers until paid. This feature of the transaction in each of the cases cited, influenced in a large degree the decision of the court. In its facts the case of Murch v. Wright, 46 Ill. 487, is not at all like the case at bar. There a piano priced at $700 was delivered to one denominated a lessee, who paid $50 on receipt of the instrument, and bound himself to pay $50 each month thereafter until the full sum of $700 should be paid. The transaction was held a sale. In the case at bar Chatterton assumed no liability and did not, in our opinion, become the owner of the pianos, but held them for sale for the John Church Company. Chatterton was the owner of certain other pianos which he sold to the Church Company during the time he was acting as its agent. These pianos were, at the time of such sale, in Chatterton's place of business, where were also the pianos held by him for sale under the contract we have been considering. An agent of the Church Company came to his place of business

and there the contract of purchase and sale was consummated, and it was there also agreed that the pianos so sold should be received by Chatterton into and become a part of the stock of pianos held by him for sale under the contract with the Church Co. These pianos were present at the time and place when and where the sale was concluded, and were designated, but were not removed from the place of sale and remained there to be sold by Chatterton, as agent, together with the other pianos likewise in his control. The good faith of this sale is not attacked. It is, however, contended that the vendor retained the possession, and the sale was for that reason illegal and of no avail against creditors. A change of the location or the passing from hand to hand of the article sold is not indispensable to a valid delivery, but the character of the article, its bulk and weight, etc., the facility with which it might be removed or handled, are to be considered. In the case at bar we think the mere designation of the pianos and the surrender by the vendor of all power of control over them, and the rightful assumption of such power by the vendee, was a sufficient delivery to consummate the sale, not only as between the buyer and seller, but against creditors, so long as the vendee continued so in possession. The fact that the buyer returned them to the possession of the vendor by the same mode of delivery, may be a circumstance tending to show that the transaction between them was merely colorable, but it is not sufficient to conclusively brand it as illegal. Wright v. Grover et al., 27 Ill. 426. It may be, and in this case was, we think, satisfactorily explained. The judgment and order of the County Court is affirmed.